***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby REVERSES the Opinion and Award of the Deputy Commissioner.
 *********** EVIDENTIARY MATTERS
At the hearing before the Full Commission, the plaintiff submitted a Motion to Amend Records and Compel Defendant to Produce its 2003 Federal Form 1099 reflecting defendant's total payments to Dr. Boyd. The Full Commission hereby DENIES plaintiff's Motion to Amend the Records and Compel Defendant to Produce the 2003 Federal Form 1099 to Dr. Boyd.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured.
3. The employee-employer relationship existed between the parties at all relevant times.
4. On September 24, 2003, plaintiff sustained a low back injury by accident arising out of and in the course of his employment with defendant when, as he was carrying a box filled with solid CO2, he slipped on ice on the floor, twisted his low back, and fell. Defendant admits this accident caused plaintiff to suffer a lumbar strain, but that plaintiff's disability from this accident, if any, ended on or before October 20, 2003. Defendant's position is that plaintiff's entitlement to any disability or medical compensation benefits related to his accident ended on or before October 20, 2003.
5. Plaintiff's average weekly wage was $470.96, which yields a weekly compensation rate of $313.99.
6. Defendant paid plaintiff $658.48 in temporary partial disability benefits during the period September 25, 2003, through October 19, 2003, related to this injury by accident.
7. Plaintiff last worked at defendant-employer on February 28, 2004. Plaintiff seeks to be awarded total disability benefits, beginning March 1, 2004, as well as medical compensation for his injury, including possible low back surgery.
8. The issues for determination are:
a. Was plaintiff's return to work effort, beginning on or about October 20, 2003, a trial return to work effort under N.C. Gen. Stat. § 97-32.1?
b. Is plaintiff entitled to additional temporary partial disability benefits for the period from September 24, 2003, through October 20, 2003?
c. Was plaintiff's trial return to work effort unsuccessful by March 1, 2004?
d. Is plaintiff entitled to a ten percent penalty for the period beginning March 1, 2004?
e. Is plaintiff entitled to additional medical compensation for treatment of his low back pain?
f. Will the Commission approve Dr. Kelly and/or Dr. Alexander at Wake Forest University Baptist Medical Center to assume plaintiff's care for his back injury?
g. Are plaintiff's current back symptoms a result of his work-related injury?
h. Is defendant entitled to a credit for any short-term disability benefits paid to plaintiff?
The parties stipulated the following documentary evidence:
a. Exhibit 1 — Medical Records, 25 pages,
b. Exhibit 2 — Defendant's Employee Health Records, four pages,
c. Exhibit 3 — Records of Holloway Chiropractic, thirteen pages, and
d. Exhibit 4 — I.C. Filings, fifteen pages.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a 34-year-old native of Mexico who completed the 6th grade in Mexico. The plaintiff speaks very little English and cannot read English.
2. The plaintiff came to the United States at age 16 in 1987. He worked in manual labor on a farm in California until 1990 and then moved to Florida where he worked as a farm laborer until 2001.
3. The plaintiff began working for the defendant on June 18, 2001, after being medically cleared to work as a heavy laborer.
4. Plaintiff testified at the hearing before the Deputy Commissioner that his job duties consisted of pushing a cart loaded with chicken waste approximately 200 feet through the plant to a waste location, and then dumping the waste into a receptacle. Plaintiff also lifted boxes of chicken weighing 60 — 70 pounds and pushed them across the floor, lifted 40 — 50 pounds of dry ice and dumped them into a receptacle and cleaned and washed down the floor. The plaintiff further testified that prior to September 23, 2003, he had no problems performing this job, had never had any back problems and had never hurt his back.
5. On September 24, 2003, the plaintiff was at work carrying a box of solid carbon dioxide when his foot slipped on ice on the floor, causing him to slide on the floor, lose his balance, twist and jerk his low back and fall backwards. The plaintiff felt immediate severe low back pain radiating into both legs and his legs got weak.
6. The plaintiff reported this incident to his supervisor, Toby Ham, as best he could because Mr. Ham speaks little Spanish. The plaintiff did, however, complete a Spanish-written accident report.
7. Plaintiff reported to the defendant's medical department and to the plant physician's office where he saw Mr. Gary G. Nichols, a physician's assistant. Mr. Nichols noted that the plaintiff could hardly walk and had extreme muscle spasm of the lumbar spine. Mr. Nichols determined the plaintiff suffered from "congenital spondylolistheses" and "acute lumbar sacral strain syndrome." Mr. Nichols also determined that the plaintiff could endure "no prolonged standing, pushing, pulling, lifting, bending, squatting or climbing."
8. The plaintiff attempted to return to his shift after presenting to Mr. Nichols but was experiencing too much pain in his back and in his legs. The plaintiff reported this pain to a Spanish-speaking supervisor who sent the plaintiff to Nurse Patricia Eloines. Nurse Eloines sent the plaintiff home to return the next day to report to Dr. John Bond.
9. On September 25, 2003, the plaintiff presented to Dr. Bond, general surgeon and plant physician. Dr. Bond limited the plaintiff to working only 2 hours per day with no lifting, repetitive bending, climbing, pulling or tugging. On October 8, 2003, and until October 14, 2003, Dr. Bond permitted the plaintiff to work for 4 hours per day trimming chickens, alternating sitting and standing with a stool to sit on at times.
10. On October 14, 2003, Dr. Bond injected plaintiff with Cortisone and Xylocaine and increased his working hours to 6 hours per day. The plaintiff was assigned to the "parts washer" job where he was required to pick up dropped chicken parts off of the floor. The defendant provided the plaintiff with a 3-foot metal rod with a hook on the end with which to pick up the parts without bending. The plaintiff testified at the hearing before the Deputy Commissioner that this job worsened his back pain. Notwithstanding plaintiff's ongoing pain due to the parts washer job, this was the job assigned to plaintiff and that he performed until February 28, 2004, plaintiff's last day of work.
11. On October 20, 2003, Dr. Bond opined that plaintiff was "basically over his previous discomfort" and that although plaintiff should not return to heavy lifting, he could return to full time work with no heavy lifting.
12. Nurse Tonya Triplett followed up with plaintiff on December 1, 2003, and recorded in her notes that plaintiff "denies any pain or discomfort" to his back, however, at the hearing before the Deputy Commissioner, the plaintiff denied telling Nurse Triplett that he had no pain, and explained that he could not describe his pain to her because she could not speak Spanish.
13. The plaintiff further testified at the hearing before the Deputy Commissioner that although he continued to work full time, he did indeed experience ongoing back pain from October 20, 2003, through December 18, 2003, and continuing. Moreover, the plaintiff testified that the pain was always worse at the end of the workday.
14. From December 18, 2003, until January 18, 2004, the plaintiff took a leave of absence from work so that he and his family could return to Mexico to visit his ailing mother-in-law. The plaintiff testified that due to his severe back and leg pain, he only drove twice on the journey to Mexico for a total of 2 — 3 hours and the rest of the time he reclined in the passenger's front seat or in the back of the van, which converted into a bed.
15. At the hearing before the Deputy Commissioner, the plaintiff further testified that while in Mexico, his back pain was so severe that on December 26, 2003, he presented to Dr. Cruz-Blancas reporting intense back pain due to a "traumatism" at work during work hours carrying ice. Dr. Cruz-Blancas gave the plaintiff two injections to alleviate his back pain.
16. The plaintiff returned to work for defendant as a parts washer on January 19, 2004. However, in February, Mr. Ham assigned the plaintiff to additional job duties requiring him to repeatedly bend nearly to the floor. Also, the plaintiff had to perform additional lifting duties outside of his restrictions when Mr. Ham was out due to a death in his family. The plaintiff testified before the Deputy Commissioner that these additional duties outside of plaintiff's restrictions made his back pain much worse.
17. The plaintiff last worked on February 28, 2004. He testified that he could no longer work due to his severe back pain and that his legs gave out.
18. On March 3, 2004, the plaintiff could hardly walk and presented to Dr. Bond again complaining of increased back pain, numbness into his calf and stating that he had never experienced back pain prior to September 24, 2003.
19. Dr. Bond initially opined that it is probable that plaintiff's accident of September 24, 2003, was a significant causal factor in producing the plaintiff's low back pain. Later in his testimony, however, Dr. Bond stated that plaintiff's pain was not related to his September 24, 2003, back injury. Finally, Dr. Bond opined that plaintiff's September 24, 2003 back injury could or might have been related to plaintiff's back pain, although Dr. Bond believed such relationship was not probable.
20. On June 9, 2004, the plaintiff presented to Dr. David L. Kelly, neurosurgeon and consistently reported his difficulty began in September of 2003. Dr. Kelly then referred the plaintiff to Dr. Joseph T. Alexander, neurosurgeon and spine specialist.
21. The plaintiff presented to Dr. Alexander who opined that plaintiff's injury did not appear to be a congenital problem as congenital spondylolesthesis reveals itself in childhood. Dr. Alexander further opined that plaintiff's condition appeared to be a spodylolysis of indeterminate age that may have predated plaintiff's accident but was clearly exacerbated and made symptomatic by the accident. Finally, Dr. Alexander determined that the plaintiff needed surgery.
22. Dr. Alexander opined that the plaintiff's low back problems were a result of his work-related accident of September 24, 2003. Furthermore Dr. Alexander opined that plaintiff's accident on September 24, 2003, when he slipped and twisted his low back, was a significant causal factor in plaintiff's having back and leg pain in the period thereafter, and that the accident aggravated and made symptomatic plaintiff's preexisting non-symptomatic spondylilisthetic and degenerative disc disease conditions.
23. The Full Commission gives greater weight to the opinions of Dr. Alexander, a neurosurgeon and spine specialist over those of Dr. Bond, a general surgeon.
24. The Full Commission finds the plaintiff to be credible.
25. The competent evidence in the record establishes that the plaintiff sustained a specific traumatic incident of the work assigned when he slipped on ice and fell while working for defendant on September 24, 2003. Moreover, the competent evidence in the record establishes that the plaintiff has suffered ongoing pain in his back and legs since September 24, 2003 and continuing due to the injury by accident he sustained on September 24, 2003.
26. Plaintiff's average weekly wage per a Form 22 is $470.96, yielding a compensation rate of $313.99.
27. The defendants paid plaintiff temporary partial disability from September 24, 2003, until October 20, 2003.
28. The defendants paid the plaintiff short term disability payments in the amount of $180.00 per week for four weeks beginning in March of 2004.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission hereby enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to his back arising out of and in the course of employment with defendant and as a direct result of a specific traumatic incident of the work assigned on September 24, 2003. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's compensable injury to his back, he is entitled to temporary total disability at a weekly rate of $313.99 beginning March 1, 2004 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. As a result of the plaintiff's compensable injury, he is entitled to receive temporary partial disability compensation from September 24, 2003 until October 20, 2003 in the appropriate amounts to be determined by the hours actually worked by the plaintiff as reflected in the defendant's company records. N.C. Gen. Stat. § 97-30.
4. Plaintiff is entitled to all reasonably necessary medical treatment related to his injuries by accident for so long as such treatment tends to effect a cure, provide relief or lessen the period of disability, including all surgeries, evaluations, examinations and treatment performed by Dr. Kelly and/or by Dr. Anderson. N.C. Gen. Stat. §§ 97-25.1; 97-25.
5. Dr. Anderson is approved as plaintiff's treating physician. N.C. Gen. Stat. § 97-25.
6. Defendants are entitled to a credit for the short-term disability payments paid to the plaintiff in the amount of $180.00 per week for four weeks beginning in March of 2004. N.C. Gen. Stat. § 97-42.1.
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney fee herein approved, defendants shall pay temporary total disability benefits to plaintiff for the injury to his back in the amount of $313.99 per week beginning on March 1, 2004 and continuing until further order of the Commission. Compensation due that has accrued shall be paid in a lump sum.
2. Subject to a reasonable attorney fee herein approved, defendants shall pay to plaintiff temporary partial disability compensation from September 24, 2003 until October 20, 2003 in the appropriate amounts to be determined by the hours actually worked by the plaintiff as reflected in the defendant's company records. Compensation due that has accrued shall be paid in a lump sum.
3. Plaintiff is entitled to all reasonably necessary medical treatment related to his injuries by accident for so long as such treatment tends to effect a cure, provide relief or lessen the period of disability, including all surgeries, evaluations, examinations and treatment performed by Dr. Kelly and/or Dr. Anderson. Dr. Anderson is approved as plaintiff's treating physician.
4. As plaintiff has not reached maximum medical improvement, this Opinion does not address this issue. However, in the event the parties are unable to agree on the amount of permanent partial disability, if any, which may be due plaintiff, either party may request a hearing from the Commission to resolve this issue.
5. Defendants are entitled to a credit for the short-term disability payments paid to the plaintiff in the amount of $180.00 per week for four weeks beginning in March of 2004.
6. Plaintiff's counsel is entitled to reasonable attorney's fees in an amount equal to twenty five percent (25%) of the sums due plaintiff under paragraphs 1 and 2 of this Award to be paid directly to plaintiff's counsel by deducting one-fourth of the lump sum due plaintiff and thereafter by every fourth check to be paid directly to plaintiff's counsel.
7. Defendant shall bear the costs.
This the ___ day of July 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER